IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> v. <br><br> **[3] MIGUEL CRUZ-KUILAN** <br><br> Defendants. | Criminal No. 17-611 (ADC) (MBA) |

## REPORT AND RECOMMENDATION

Before the Court is Miguel Cruz-Kuilan's motion for 18 U.S.C. § 3582(c)(1)A) relief (commonly known as a motion for compassionate release). (ECF No. 599). Cruz-Kuilan appears to argue that he is entitled to compassionate because of changes to U.S. Sentencing Guidelines, his rehabilitation, and his medical conditions. (*Id.*). The government opposed, arguing that Cruz-Kuilan failed to present an extraordinary and compelling circumstance warranting relief disputing any change in the Guidelines and arguing that rehabilitation alone is not sufficient to justify compassionate release and that Cruz-Kuilan's medical conditions are being appropriately treated by the Bureau of Prisons. (ECF No. 608). U.S. District Judge Aida M. Delgado-Colón referred the motion to me for a report and recommendation. (ECF No. 603). For the reasons set forth below, I recommend the motion for compassionate release be **DENIED**.

### BACKGROUND

On or about October 2016, Cruz-Kuilan served as a lookout while his coconspirators robbed two women replenishing a Banco Popular ATM machine of approximately $80,000. (ECF No. 325 at 10). During the robbery, one of the coconspirators pointed a firearm at the women. (*Id.*). Then, on March 30, 2017, Cruz-Kuilan and his coconspirators robbed a Ranger American courier of approximately $16,900. (*Id.*). In this second robbery, two of Cruz-Kuilan's coconspirators discharged

firearms at the Ranger American courier. (*Id.* at 10-11). As a result, two male bystanders were struck by bullets and died. (*Id.* at 11). Cruz-Kuilan, who had been acting as a lookout, facilitated the getaway of his two armed coconspirators. (*Id.*).

For this conduct, in December 2019, Cruz-Kuilan was charged with seven counts in a second superseding indictment. (ECF No. 267). Specifically, he was charged with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count One); interference with commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count Two); possession of a firearm in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. § 924(a)(1) (Count Three); being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Seven); possession of firearms in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. § 924(a)(1) (Count Nine); bank robbery in violation of 18 U.S.C. § 2113(a) & (d) (Count Ten); and possession and brandishing of firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(a)(1)(A)(ii) (Count Eleven).

Cruz-Kuilan pled guilty to Count One pursuant to a plea agreement. The plea agreement calculated a base offense level of 38 pursuant to USSG §§ 2B3.1(c) and 2A1.2 (Second Degree Murder). (ECF No. 325 at 3). Two levels were subtracted applying a departure under USSG §§ 5H1.1 and 5H1.4, and a further three levels were subtracted for acceptance of responsibility for a total offense level of 33. (*Id.*). With a criminal history category of II, the sentencing range would 151 to 188 months' imprisonment. (*Id.*). The parties agreed to recommend a sentence between 151 and 188 months. (*Id.* at 4). Probation filed a presentence report where Cruz-Kuilan's base offense level was 43 pursuant to USSG §§ 2B3.1(c) and 2A1.1 (First Degree Murder). (ECF No. 347 at 15). However, the presentence report noted that the Court could consider Cruz-Kuilan's age, mental and emotional conditions, and physical condition or appearance for a downward departure pursuant to USSG §§ 5H1.1, 5H1.3, and 5H1.4. (*Id.* at 26-27).

On October 14, 2020, Cruz-Kuilan was sentenced to 188 months' imprisonment and two years' supervised release. (ECF No. 327, 362). In selecting the sentence, the Court adopted the recommendations made in the presentence report and applied USSG § 5H1.3 in addition to the USSG §§ 5H1.1 and 5H1.4 recommended in the plea agreement. (ECF No. 364 at 2). Nearly five years later, on June 2, 2025, Cruz-Kuilan filed the motion for compassionate release presently before this Court. (ECF No. 599).

In his compassionate release motion, Cruz-Kuilan references several Guideline Amendments without any argumentation, none of which are applicable to his conviction or criminal history.[1] (ECF No. 599 at 2-7). He also states without explanation that he "never during his legal process was allowed to the innocence presumption. He does not receive an adjustment under Sec. 3B1.1 and he was not engaged in a continuing criminal enterprise." (*Id.* at 8). He attached an affidavit titled "THE HUMAN FACTOR" detailing his current health condition and age. (*Id.* at 8-9). Therein, he asserts he suffers from diabetes, neuropathy, asthma, cholesterol, and a vitamin D deficiency. (*Id.* at 9). As to treatment, he acknowledges he is receiving medication for his conditions, but claims "that prison is not a good place to get real medical attention" and "a year in prison confinement without adequate care is equivalent to five years for a healthy and/or young person." (*Id.*).

The government opposed, arguing that Cruz-Kuilan is not entitled to compassionate release because there are no applicable changes to the guidelines, rehabilitation alone is insufficient, and that his medical concerns are appropriately addressed at the Bureau of Prisons ("BOP"). (ECF No. 608). For the following reasons, the Court agrees and recommends the motion be denied.

---

[1] The inapplicability of sections of the motion may be due at least in part, as noted by the government, by the fact that Cruz-Kuilan appears to have copied another inmate's motion. (ECF No. 608 at 8 n.3) (*See* ECF No. 599 at 3 & 5) (referencing "Mr. Tavares").

3

## STANDARD OF REVIEW

Once a term of imprisonment has been imposed, there are few limited circumstances in which it may be modified. *United States v. Saccoccia*, 10 F. 4th 1, 3 (1st Cir. 2021). One such circumstance is the "statute carved" motion for compassionate release. *Id.* In 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A)(i) to allow incarcerated defendants to file a motion for compassionate release. *United States v. Texeira-Nieves*, 23 F.4th 48, 52-53 (1st Cir. 2022).

To present such a motion, the petitioner must have first "fully exhausted all administrative rights."18 U.S.C. § 3582(c)(1)(A)(i). Next, the First Step Act allows a court to modify a petitioner's term of imprisonment if the petitioner is able to show that: (1) extraordinary and compelling reasons exist, (2) the sentence reduction is consistent with USSG § 1B1.13, and (3) the § 3553(a) factors favor release. *United States v. D'Angelo*, 110 F.4th 42, 48 (1st Cir. 2024). "A district court may grant a compassionate release motion only if it finds that the movant satisfies each step." *D'Angelo*, 110 F.4th at 48 (citations omitted). Conversely, the court "must deny the motion if that movant fails at any step." *Id.* The court may conduct "a holistic review to determine whether the individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release." *United States v. Vega-Figueroa*, 139 F.4th 77, 80-81 (1st Cir. 2025) (quoting *United States v. Trenkler*, 47 F.4th 42, 47 (1st Cir. 2022)). However, the court is not required to provide an "exhaustive explanation" of every factor in its analysis. *Id.* at 82 (citing *United States v. Quirós-Morales*, 83 F.4th 79, 83 (1st Cir. 2023) ("[D]istrict court[s] need not consider every potential configuration of grounds for compassionate release but, rather, [their] analysis 'should be shaped by the arguments advanced by defendants.'") (quoting *United States v. Gonzalez*, 68 F.4th 699, 706 (1st Cir. 2023)))). And "even if a defendant shows that there are extraordinary and compelling circumstances warranting a reduced sentence, that motion may still be denied solely on the basis of the district court's supportable determination that the § 3553(a) factors weight against the granting of such relief." *D'Angelo*, 110 F.4th

at 49 (cleaned up).

The burden is on the defendant to establish that the sentence reduction is warranted. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (movant bears the burden of establishing extraordinary and compelling reasons); *United States v. Hodges*, 2025 U.S. Dist. LEXIS 123405, *20-21; 2025 WL 1796098, *8 (D. Me. June 30, 2025) ("The First Circuit has made clear that a movant for compassionate release bears the burden of establishing extraordinary and compelling reasons support her requested relief"). While the statute does not define extraordinary and compelling reasons, courts look to the U.S. Sentencing Commission's policy statements. *Vega-Figueroa*, 139 F.4th at 81 ("To grant relief, the court must find that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission'") (quoting 18 U.S.C. § 3582(c)(1)(A)). Under USSG § 1B1.13(b) there are six numerated extraordinary and compelling reasons: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons that are "similar in gravity" to reasons 1-4; and (6) unusually long sentence.

Furthermore, rehabilitation pursuant to 28 U.S.C. § 994(t) is not considered an extraordinary and compelling reason alone, but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." USSG § 1B1.13(d).

## DISCUSSION

Cruz-Kuilan has failed to show compassionate release is warranted under 18 U.S.C. § 3582(c)(1)(A). First, he has failed to present any extraordinary and compelling circumstances either through guideline changes, medical circumstances, or age. Second, and likewise fatal, he has failed to even argue that the § 3553(a) factors favor release. Therefore, I recommend the motion be **DENIED**.

### I. Exhaustion of Administrative Remedies

The Court looks first to whether the defendant has exhausted his administrative remedies. The

5

administrative exhaustion requirement is "a non-jurisdictional claim-processing rule" and therefore is mandatory unless waived or conceded by the government. *Texeira-Nieves*, 23 F.4th at 53 ("The administrative exhaustion requirement in § 3582(c)(1)(A) neither 'speaks in jurisdictional terms' nor 'refers in any way to the court's jurisdiction'") (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)) (cleaned up); *United States v. Vazquez-Figueroa*, 2025 U.S. Dist. LEXIS 151599, at *11; 2025 WL 2212131, at *4 (D.P.R. Aug. 5, 2025) ("The exhaustion requirement is not a jurisdictional bar; rather it is a nonjurisdictional claim-processing rule" and "the government can waive it 'either expressly or by failing to raise it as a defense'") (cleaned up).

Here, Cruz-Kuilan filed his motion on June 2, 2025. (ECF No. 599). He attached to the motion his application for compassionate release that he previously submitted to BOP on March 23, 2025. (ECF No. 599-1 at 21). The government agrees with Cruz-Kuilan that he has exhausted his administrative remedies. (ECF No. 608 at 7). Therefore, the Court turns to the remaining requirements.

II. **Extraordinary and Compelling Reasons**

Cruz-Kuilan fails to provide any arguments as to why his cited circumstances and conditions— whether individually or in combination— constitute an extraordinary and compelling reason to justify compassionate release. He cites to a number of guidelines without a showing of applicability, which they are not. (ECF No. 599 at 2-7).[2] He also alleges, without support, he was not "allowed to the innocence presumption." (*Id.* at 8). The thrust of the motion for which he provides support rests on his medical conditions and age. (*Id.* at 8-9). None (alone or in combination) meet the threshold.

---

[2] He also claims that he did "not receive an adjustment under Sec. 3B1.1 and was not engaged in a continuing criminal enterprise." (ECF No. 599 at 8). However, both are inapposite to the present motion. These are relevant to motions for status adjustments such as the one filed separately by Cruz-Kuilan under Amendment 821. (*See* ECF No. 601).

### a. U.S. Sentencing Guideline Changes

There has been no change in Cruz-Kuilan's guideline calculations. Cruz-Kuilan pled guilty to Count One of the Second Superseding Indictment, conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a). His guidelines, as calculated in the Amended Presentence Report that was adopted by Court include a base offense level of 20 pursuant to USSG § 2B3.1(a), a two level increase since it was the property of a financial institution, a five level increase for brandishing or possessing a firearm, and a one level increase since the loss exceeded $20,000 but was less than $95,000 for an adjusted offense level of 28. (ECF No. 347 at 15). With the application of the murder cross reference pursuant to USSG § 2B3.1(c)(1), 2A1.1 there was an adjusted offense level of 43 for a combined adjusted offense level of 43. (*Id.* at 16). Three levels were subtracted for acceptance of responsibility, for a total offense level of 40. (*Id.*). A total offense level of 40 and a criminal history category of I equal a guideline imprisonment range of 292 to 365 months. (*Id.* at 24). That guideline was then capped by the statutory maximum sentence for 18 U.S.C. § 1951(a) of twenty years, for a guideline range of 240 months. None of those guidelines have changed since Cruz-Kuilan's sentence in 2020. As such, his 188 months' imprisonment remains a significant downward departure and/or variance from the capped guideline range of 240 months. Therefore Cruz-Kuilan has failed to show any guideline changes that constitute extraordinary and compelling circumstances.

### b. Medical Circumstances

Cruz-Kuilan's medical conditions are largely not new. They were noted and accounted for when he was sentenced. While the plea agreement only recommended the application of USSG §§ 5H1.1 and 5H1.4—age and physical condition—the Court also applied USSG § 5H1.3—mental and emotional condition—as a reason to downwardly depart from the guidelines.[3] (ECF No. 364 at

---

[3] U.S. Sentencing Guideline § 5H1.1, the age policy statement, explains that "[a]ge may be relevant in determining whether a departure is warranted." U.S. Sentencing Guideline § 5H1.3 explains that

2). Moreover, at sentencing the Court recommended that the BOP provide him a medical evaluation and health treatment for his diabetes, hypertension, asthma, and osteoarthritis. (ECF No. 363 at 2). Nonetheless, they may still be considered extraordinary and compelling reasons under USSG § 1B1.13. *See* USSG § 1B1.13(e) ("For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement"); *United States v. Rivera*, 2024 U.S. Dist. LEXIS 118987, 2024 WL 3329127, *5-6 (D. Mass. 2024) (finding no extraordinary and compelling circumstances when the medical conditions were "receiving an appropriate level of care" at BOP and the court knew of the defendant's medical circumstances at sentencing and "nonetheless determined that the sentence imposed was warranted").

However, Cruz-Kuilan fails to establish that his current medical circumstances entitle him to compassionate release. Under USSG § 1B1.13(b)(1), extraordinary and compelling reasons may exist, among others, when the petitioner "is suffering from a serious physical or mental condition," or is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13(b)(1)(B). In addition, medical circumstances warranting compassionate relief include when the defendant requires "specialized

---

"[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S. Sentencing Guideline § 5H1.4 explains that "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."

medical care that is not being provided […]." § 1B1.13(b)(1)(C). However, "Courts generally view compassionate release due solely to a medical condition as an extraordinary and rare event granted only in cases of notable severity." *United States v. Rivera-Vazquez*, 2024 U.S. Dist. LEXIS 196663, *9; 2024 WL 4601338, at *4 (D.P.R. Oct. 29, 2024).

Cruz-Kuilan does not argue that his health has significantly declined because of the aging process nor that his medical conditions diminish his ability to properly care for himself. To the contrary, Cruz-Kuilan asserts that his "physical problems are not consequence[s] of his age but from an old [automobile] accident" that have "increase[d] with . . . age." (ECF No. 599 at 9). At best, Cruz-Kuilan argues prison facilities in general do not provide "real medical attention." (*Id.*). But his medical documentation rebuts this conclusory allegation. He is indeed receiving appropriate care and his conditions and response to medication actively monitored. (ECF No. 608-2). His general grievance about prison medical care is insufficient to rise to the level of an extraordinary and compelling circumstance. *See United States v. Farmer*, 2022 U.S. Dist. LEXIS 2152, at *11, 2022 WL 47517, at *4 (S.D.N.Y. 2022) ("generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release"). After all, "[w]ords like 'extraordinary' and 'compelling,' when used by Congress in framing a statute, must be given their plain meaning." *United States v. Saccoccia*, 10 F.4th 1, 5 (1st Cir. 2021) (citing *Robb Evans & Assocs. v. United States*, 850 F.3d 24, 34 (1st Cir. 2017); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997)). Generalized grievances by definition are not that.

   c. **Age**

Cruz-Kuilan does not have the age required to trigger § 1B1.13(b)(2). Under this guideline, age constitutes an extraordinary and compelling reason when the individual is "(A) [] at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is

less." First, Cruz-Kuilan is not yet 65 years old. Second , he has failed to show deterioration is due to age (in fact he argues the opposite) ("physical problems are not consequence of his age but from an old [automobile] accident [with] [consequences] and pain just increase with the age") (ECF No. 599 at 9). And third, he has not yet served 10 years or 75% of his imprisonment. Therefore, his age does not constitute an extraordinary and compelling circumstance as provided by this section.

### d. Presumption of innocence

Cruz-Kuilan argues that he was never afforded a presumption of innocence. However, he knowingly and intentionally waived that right when he pled guilty to Count One of the second superseding indictment. *United States v. Lopez Sanchez*, 709 F. Supp. 302, 303 (D.P.R. 1989) ("The defendant who has pled guilty no longer enjoys a presumption of innocence"). At his change of plea colloquy, Cruz-Kuilan was explicitly told that he had the right to "be presumed innocent" at trial, and that by pleading guilty he was waiving that right. (ECF No. 328 at 2; ECF No. 327). This is documented in his signed plea agreement, where he affirmed his understanding that he could pursue a plea not guilty, that he would be presumed innocent, and could not be convicted by a jury unless "after hearing all the evidence, [] was persuaded of [his] guilt beyond a reasonable doubt." (ECF No. 325 at 5). Cruz-Kuilan was fully aware that he was waiving this, and other constitutional rights when he entered his guilty plea before the Court. (ECF No. 327).

### e. Rehabilitation

Finally, Cruz-Kuilan cites to rehabilitation as an extraordinary and compelling reason for compassionate release. He fails, however, to develop this argument therefore waiving his claim. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *United States v. Nichnianidze*, 342 F.3d 6, 18 (1st Cir. 2003) (holding that the *pro se* appellant had waived his argument because it was not developed). And in any case, because he failed to show any extraordinary

and compelling reasons, he cannot rely on rehabilitation alone as an extraordinary and compelling reason for compassionate release. *See* USSG § 1B1.13(d) ("rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement"); *United States v. Gonzalez*, 68 F.4th 699, 704 (1st Cir. 2023) ("a district court 'may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief' with the exception of rehabilitation alone, since Congress explicitly mandated that such a rationale 'shall not be considered an extraordinary and compelling reason'") (quoting *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2023) (cleaned up)); *United States v. Vazquez-Figueroa*, 2025 U.S. Dist. LEXIS 151599 at * 13; 2025 WL 2212131, at *5 (D.P.R. Aug. 5, 2025) ("rehabilitation efforts and good conduct in prison cannot by themselves satisfy the extraordinary and compelling reasons standard"). Moreover, even if considered in conjunction with his age and medical ailments, his all but expected alleged good behavior does not add up to an extraordinary and compelling circumstance warranting compassionate relief. *See Rivera-Vazquez*, 2024 U.S. Dist. LEXIS 196663, at *13; 2024 WL 4601338, at *5 (finding that even when looked at in combination, rehabilitation was not "sufficient to tip the balance in his favor").

### III.    18 U.S.C. § 3553(a) factors

Cruz-Kuilan makes no attempt to argue that the § 3553(a) factors weigh in his favor, waiving this contention. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *United States v. Nichnianidze*, 342 F.3d 6, 18 (1st Cir. 2003) (holding that the *pro se* appellant had waived his argument because it was not developed). Because he bears the burden of proving entitlement to relief, even if Cruz-Kuilan could show an extraordinary and compelling circumstance, his motion should still be denied for failure to meet this showing. *See D'Angelo*, 110 F.4th at 48 (the court "must deny the motion if that movant fails at any step").

## CONCLUSION

For the foregoing reasons I recommend Miguel Cruz-Kuilan's motion for compassionate release be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this October 2, 2025.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge